**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**July 22, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

In re: JOHN Q. HAMMONS FALL
2006, LLC; ACLOST, LLC;
BRICKTOWN RESIDENCE
CATERING CO., INC.; CHATEAU
CATERING CO., INC.; CHATEAU
LAKE, LLC; CITY CENTRE HOTEL
CORP.; CIVIC CENTER
REDEVELOPMENT CORP.;
CONCORD GOLF CATERING CO.,
INC.; CONCORD HOTEL
CATERING CO., INC.; EAST
PEORIA CATERING CO., INC.;
FORT SMITH CATERING CO., INC.;
FRANKLIN/CRESCENT CATERING
CO., INC.; GLENDALE COYOTES
CATERING CO., INC.; GLENDALE
COYOTES HOTEL CATERING CO.,
INC.; HAMMONS OF ARKANSAS,
LLC; HAMMONS OF COLORADO,
LLC; HAMMONS OF FRANKLIN,
LLC; HAMMONS OF FRISCO, LLC;
HAMMONS OF HUNTSVILLE, LLC;
HAMMONS OF LINCOLN, LLC;
HAMMONS OF NEW MEXICO, LLC;
HAMMONS OF OKLAHOMA CITY,
LLC; HAMMONS OF RICHARDSON,
LLC; HAMMONS OF ROGERS,
INC.; HAMMONS OF SIOUX
FALLS, LLC; HAMMONS OF
SOUTH CAROLINA, LLC;
HAMMONS OF TULSA, LLC;
HAMMONS, INC.; HAMPTON
CATERING CO., INC.; HOT
SPRINGS CATERING CO., INC.;
HUNTSVILLE CATERING, LLC;
INTERNATIONAL CATERING CO.,
INC.; JQH - ALLEN
DEVELOPMENT, LLC; JQH -

No. 20-3203
(16-21142)
(United States Bankruptcy Court for
the District of Kansas)

CONCORD DEVELOPMENT, LLC; JQH - EAST PEORIA DEVELOPMENT, LLC; JQH - FT. SMITH DEVELOPMENT, LLC; JQH - GLENDALE AZ DEVELOPMENT, LLC; JQH - KANSAS CITY DEVELOPMENT, LLC; JQH - LA VISTA CY DEVELOPMENT, LLC; JQH - LA VISTA CONFERENCE CENTER DEVELOPMENT, LLC; JQH - LA VISTA III DEVELOPMENT, LLC; JQH - LAKE OF THE OZARKS DEVELOPMENT, LLC; JQH - MURFREESBORO DEVELOPMENT, LLC; JQH - NORMAL DEVELOPMENT, LLC; JQH - NORMAN DEVELOPMENT, LLC; JQH - OKLAHOMA CITY BRICKTOWN DEVELOPMENT, LLC; JQH - OLATHE DEVELOPMENT, LLC; JQH - PLEASANT GROVE DEVELOPMENT, LLC; JQH - ROGERS CONVENTION CENTER DEVELOPMENT, LLC; JQH - SAN MARCOS DEVELOPMENT, LLC; JOHN Q. HAMMONS 2015 LOAN HOLDINGS, LLC; JOHN Q. HAMMONS CENTER, LLC; JOHN Q. HAMMONS HOTELS DEVELOPMENT, LLC; JOHN Q. HAMMONS HOTELS MANAGEMENT I CORPORATION; JOHN Q. HAMMONS HOTELS MANAGEMENT II, LP; JOHN Q. HAMMONS HOTELS MANAGEMENT, LLC; JOPLIN RESIDENCE CATERING CO., INC.; JUNCTION CITY CATERING CO., INC.; KC RESIDENCE CATERING CO., INC.; LA VISTA CY CATERING CO., INC.; LA VISTA ES CATERING CO., INC.; LINCOLN P

2

STREET CATERING CO., INC.;
LOVELAND CATERING CO., INC.;
MANZANO CATERING CO., INC.;
MURFREESBORO CATERING CO.,
INC.; NORMAL CATERING CO.,
INC.; OKC COURTYARD
CATERING CO., INC.; R-2
OPERATING CO., INC.;
REVOCABLE TRUST OF JOHN Q.
HAMMONS DATED DECEMBER 28,
1989 AS AMENDED AND
RESTATED; RICHARDSON
HAMMONS, LP; ROGERS ES
CATERING CO., INC.; SGF -
COURTYARD CATERING CO.,
INC.; SIOUX FALLS
CONVENTION/ARENA CATERING
CO., INC.; ST. CHARLES
CATERING CO., INC.; TULSA/169
CATERING CO., INC.; U.P.
CATERING CO., INC.,

Debtors.

------------------------------

JOHN Q. HAMMONS FALL 2006,
LLC; ACLOST, LLC; BRICKTOWN
RESIDENCE CATERING CO., INC.;
CHATEAU CATERING CO., INC.;
CHATEAU LAKE, LLC; CITY
CENTRE HOTEL CORP.; CIVIC
CENTER REDEVELOPMENT
CORP.; CONCORD GOLF
CATERING CO., INC.; CONCORD
HOTEL CATERING CO., INC.; EAST
PEORIA CATERING CO., INC.;
FORT SMITH CATERING CO., INC.;
FRANKLIN/CRESCENT CATERING
CO., INC.; GLENDALE COYOTES
CATERING CO., INC.; GLENDALE
COYOTES HOTEL CATERING CO.,
INC.; HAMMONS OF ARKANSAS,

3

LLC; HAMMONS OF COLORADO, LLC; HAMMONS OF FRANKLIN, LLC; HAMMONS OF FRISCO, LLC; HAMMONS OF HUNTSVILLE, LLC; HAMMONS OF LINCOLN, LLC; HAMMONS OF NEW MEXICO, LLC; HAMMONS OF OKLAHOMA CITY, LLC; HAMMONS OF RICHARDSON, LLC; HAMMONS OF ROGERS, INC.; HAMMONS OF SIOUX FALLS, LLC; HAMMONS OF SOUTH CAROLINA, LLC; HAMMONS OF TULSA, LLC; HAMMONS, INC.; HAMPTON CATERING CO., INC.; HOT SPRINGS CATERING CO., INC.; HUNTSVILLE CATERING, LLC; INTERNATIONAL CATERING CO., INC.; JQH - ALLEN DEVELOPMENT, LLC; JQH - CONCORD DEVELOPMENT, LLC; JQH - EAST PEORIA DEVELOPMENT, LLC; JQH - FT. SMITH DEVELOPMENT, LLC; JQH - GLENDALE AZ DEVELOPMENT, LLC; JQH - KANSAS CITY DEVELOPMENT, LLC; JQH - LA VISTA CY DEVELOPMENT, LLC; JQH - LA VISTA CONFERENCE CENTER DEVELOPMENT, LLC; JQH - LA VISTA III DEVELOPMENT, LLC; JQH - LAKE OF THE OZARKS DEVELOPMENT, LLC; JQH - MURFREESBORO DEVELOPMENT, LLC; JQH - NORMAL DEVELOPMENT, LLC; JQH - NORMAN DEVELOPMENT, LLC; JQH - OKLAHOMA CITY BRICKTOWN DEVELOPMENT, LLC; JQH - OLATHE DEVELOPMENT, LLC; JQH - PLEASANT GROVE DEVELOPMENT, LLC; JQH -

4

ROGERS CONVENTION CENTER DEVELOPMENT, LLC; JQH - SAN MARCOS DEVELOPMENT, LLC; JOHN Q. HAMMONS 2015 LOAN HOLDINGS, LLC; JOHN Q. HAMMONS CENTER, LLC; JOHN Q. HAMMONS HOTELS DEVELOPMENT, LLC; JOHN Q. HAMMONS HOTELS MANAGEMENT I CORPORATION; JOHN Q. HAMMONS HOTELS MANAGEMENT II, LP; JOHN Q. HAMMONS HOTELS MANAGEMENT, LLC; JOPLIN RESIDENCE CATERING CO., INC.; JUNCTION CITY CATERING CO., INC.; KC RESIDENCE CATERING CO., INC.; LA VISTA CY CATERING CO., INC.; LA VISTA ES CATERING CO., INC.; LINCOLN P STREET CATERING CO., INC.; LOVELAND CATERING CO., INC.; MANZANO CATERING CO., INC.; MURFREESBORO CATERING CO., INC.; NORMAL CATERING CO., INC.; OKC COURTYARD CATERING CO., INC.; R-2 OPERATING CO., INC.; REVOCABLE TRUST OF JOHN Q. HAMMONS DATED DECEMBER 28, 1989 AS AMENDED AND RESTATED; RICHARDSON HAMMONS, LP; ROGERS ES CATERING CO., INC.; SGF - COURTYARD CATERING CO., INC.; SIOUX FALLS CONVENTION/ARENA CATERING CO., INC.; ST. CHARLES CATERING CO., INC.; TULSA/169 CATERING CO., INC.; U.P. CATERING CO., INC.,

     Appellants,

5

v.

OFFICE OF THE UNITED STATES
TRUSTEE,

      Appellee.

-----------------------------

ACADIANA MANAGEMENT
GROUP, LLC; ALBUQUERQUE-
AMG SPECIALTY HOSPITAL, LLC;
CENTRAL INDIANA-AMG
SPECIALTY HOSPITAL, LLC; LTAC
HOSPITAL OF EDMOND, LLC;
HOUMA-AMG SPECIALTY
HOSPITAL, LLC; LTAC OF
LOUISIANA, LLC; LAS VEGAS-
AMG SPECIALTY HOSPITAL, LLC;
WARREN BOEGEL; BOEGEL
FARMS, LLC and THREE BO'S, INC.

      Amici Curiae.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

This matter is before us on remand from the Supreme Court. *See Off. of the U.S. Tr. v. John Q. Hammons Fall 2006, LLC*, 144 S. Ct. 1588 (2024).

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Our country operates under a dual bankruptcy structure. The United States Trustee Program (Trustee Program) unites most of the nation's ninety-four judicial districts under one bankruptcy system. *See* Pub. L. No. 95-598, §§ 224–32, 92 Stat. 2549, 2662–65 (1978); Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, §§ 111–17, 302(d), 100 Stat. 3088, 3090–96, 3119–23. But six judicial districts—located in North Carolina and Alabama—are permanently exempt from that program. Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 501, 114 Stat. 2410, 2421–22. These districts administer bankruptcy cases under a separate system called the Bankruptcy Administrator Program.

The Bankruptcy Administrator Program is funded by the Judiciary's general budget, while the Trustee Program is self-funded through fees paid by its Chapter 11 debtors. *Siegel v. Fitzgerald*, 596 U.S. 464, 469 (2022); *see* 28 U.S.C. § 589a(b)(5). Chapter 11 debtors in Trustee Program districts pay quarterly fees to the bankruptcy court. 28 U.S.C. § 1930(a)(6). These fees are calculated from the quarterly disbursements paid to the debtors' creditors. *Id.*

Chapter 11 debtors in Bankruptcy Administrator districts were not always charged quarterly fees, but in 2000 Congress authorized those districts to start imposing fees equal to those paid in Trustee Program districts. Federal Courts Improvement Act of 2000 § 501. That permissive authority became mandatory the next year, when the Judicial Conference of the United States issued a standing order that required all federal districts to implement the same fee

7

schedule, under 28 U.S.C. § 1930. *Report of the Proceedings of the Judicial Conference of the United States* 45–46 (2001), https://www.uscourts.gov/sites/default/files/2001-09_0.pdf. That standing order remained in place for about seventeen years, during which time all Chapter 11 debtors paid equal quarterly fees regardless of which judicial district administered their case.

Then in 2017, Congress amended § 1930(a)(6) to replenish a shortage in the Trustee Program's fund. *See* Additional Supplemental Appropriations for Disaster Relief Requirements Act of 2017, Pub. L. No. 115-72, § 1004(a)(2), 131 Stat. 1224, 1232. The 2017 Act hiked up quarterly fees for Chapter 11 debtors in Trustee Program districts whose quarterly disbursements exceeded $1 million. *Id.* These increases were scheduled to begin in the first quarter of 2018 and continue through 2022. *Id.* The same fee increases were installed in Bankruptcy Administrator districts, but not until October 1, 2018. *Report of the Proceedings of the Judicial Conference of the United States* 11–12 (2018), https://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf. And in those six districts, the higher fees applied only to newly filed bankruptcy cases, while Chapter 11 debtors in the rest of the country faced the higher fees whether their cases were new or pending by the beginning of 2018.

In 2022, a Chapter 11 debtor from the Eastern District of Virginia (a Trustee Program district) challenged the constitutionality of the 2017 Act. *Siegel*, 596 U.S. at 472. Thanks to the 2017 Act, the debtor had owed and paid $632,542 during the first three quarters of 2018. *Id.* Had the debtor filed in a

Bankruptcy Administrator district, it would have owed $56,400 for the same period. *Id.* So the debtor sued, arguing that the discrepancy between the fees imposed on equally situated Chapter 11 debtors in Trustee Program districts and Bankruptcy Administrator districts violated the Bankruptcy Clause, *id.*, which empowers Congress to enact "uniform Laws on the subject of Bankruptcies throughout the United States," U.S. Const. art. I, § 8, cl. 4. The debtor asserted that the 2017 Act was nonuniform and therefore unconstitutional. *Siegel*, 596 U.S. at 472.

After an unfavorable ruling against the debtor in the Fourth Circuit, the Supreme Court granted certiorari to settle a circuit split on the 2017 Act's constitutionality. *Id.* at 473. In *Siegel*, the Supreme Court held (1) that the Bankruptcy Clause's uniformity requirement applied to the 2017 Act; and (2) that the 2017 Act violated that requirement because, though "[t]he Bankruptcy Clause affords Congress flexibility to fashion legislation to resolve geographically isolated problems," the 2017 Act inflicted "disparate treatment" on Chapter 11 debtors "not from an external and geographically isolated need, but from Congress' own decision to create a dual bankruptcy system." *Id.* at 479 (citation omitted). Essentially, the Supreme Court rejected Congress's gambit to charge some Chapter 11 debtors higher fees simply because one federal bankruptcy program suffered financial straits while the other remained solvent. *See id.* at 479–80 (contrasting the 2017 Act with the Regional Rail Reorganization Act of 1973—legislation tailored to resolve a crisis with the

9

national railway system that disproportionally affected the Northeast and Midwest regions).

In 2021, we heard an appeal from seventy-six Chapter 11 debtors affiliated with John Q. Hammons Hotels & Resorts (Debtors). *In re John Q. Hammons Fall 2006, LLC*, 15 F.4th 1011, 1016 (10th Cir. 2021). Debtors mounted a nearly identical challenge against the Office of the United States Trustee (the Trustee) as the debtor in *Siegel*: because of the 2017 Act, Debtors had "paid over $2.5 million more in quarterly fees than they would have paid had they filed in a Bankruptcy Administrator district." *Id.* at 1018. Before this court, Debtors argued first that the bankruptcy court had erred in applying the higher fees to Debtors retroactively, even though their cases were pending when Congress enacted the 2017 Act. *Id.* Second, they argued that the 2017 Act violated the Bankruptcy Clause's prohibition against nonuniform bankruptcy laws. *Id.* We held (1) that the 2017 Act fee increases unambiguously applied to existing and newly filed Chapter 11 debtors, *id.* at 1019–20, and (2) that the 2017 Act was "unconstitutionally nonuniform" because the amendment "neither applie[d] uniformly to a class of debtors nor addresse[d] a geographically isolated problem," *id.* at 1024. We determined that Debtors were entitled to monetary relief in the form of a refund for the "quarterly fees paid exceeding the amount that Debtors would have owed in a Bankruptcy Administrator district during the same period." *Id.* at 1026.

The Trustee petitioned the Supreme Court for certiorari. Petition for Writ of Certiorari, *Off. of the U.S. Tr. v. John Q. Hammons Fall 2006, LLC*, No. 21-1078 (Feb. 2, 2022). Months later, the Court decided *Siegel*. Owing to its recent decision, the Supreme Court granted the Trustee's petition, vacated our decision, and remanded for further consideration in light of *Siegel*. *Off. of the U.S. Tr. v. John Q. Hammons Fall 2006, LLC*, 142 S. Ct. 2810 (2022) (mem.). After recalling the mandate and vacating the judgment, *see* Order, No. 20-3203, ECF No. 10927037 (July 15, 2022), we directed the parties to file supplemental briefs addressing *Siegel*'s impact on the case, *see* Order, No. 20-3203, ECF No. 10927040 (July 15, 2022). Having considered the supplemental briefing and the *Siegel* opinion, we reinstated our original opinion because our analysis tracked *Siegel* on the unconstitutionality of the 2017 Act's nonuniform fee schedule. *In re John Q. Hammons Fall 2006, LLC*, No. 20-3203, 2022 WL 3354682, at *1 (10th Cir. Aug. 15, 2022). But *Siegel* left undecided what relief is appropriate for those, like Debtors, who overpaid their quarterly fees as a result of the 2017 Act. *See* 596 U.S. at 480–81. So with our reinstatement, we maintained our original remand order that Debtors receive a refund for the overcharged fees. *In re John Q. Hammons Fall 2006*, 2022 WL 3354682, at *1.

The Trustee again petitioned the Supreme Court for certiorari, this time on the sole issue that *Siegel* left open: the appropriate remedy for Chapter 11 debtors who dutifully paid the unconstitutional quarterly fees. Petition for Writ of Certiorari, *Off. of the U.S. Tr. v. John Q. Hammons Fall 2006, LLC*, No. 22-

11

1238 (June 23, 2023). The Supreme Court granted certiorari to answer that narrow question. *Off. of the U.S. Tr. v. John Q. Hammons Fall 2006, LLC*, 144 S. Ct. 480 (2023) (mem.).

The Supreme Court's opinion reverses our decision ordering a refund and holds instead that prospective uniform fees adequately "cure[] the constitutional violation." *John Q. Hammons Fall 2006*, 144 S. Ct. at 1600. The Court reasons that "Congress would have wanted prospective parity, not a refund or retrospective raising of fees" because recent legislation "evince[s] a clear desire to comply with the constitutional mandate of uniformity by requiring prospective parity."[1] *Id.* at 1596–97.

We therefore affirm our previously reinstated opinion as it pertains to the application and unconstitutionality of the 2017 Act, but we vacate our order directing the bankruptcy court to issue Debtors a refund. Consistent with the Supreme Court's opinion, no further relief is available.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[1] In 2020, Congress amended 28 U.S.C. § 1930(a)(7) to require that Bankruptcy Administrator districts impose the same quarterly fees assessed to all other Chapter 11 debtors. Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325, § 3(d)(2), 134 Stat. 5086, 5088 (replacing "may" with "shall," mandating that Chapter 11 debtors in Bankruptcy Administrator districts pay fees equal to those imposed in Trustee Program districts).